# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE DISTRICT OF COLUMBIA

IN RE: )
      )
ANGLIN CONSULTING GROUP, INC. )    **Case No: 25-00328-ELG**
      )
Debtor )    **Chapter 11**
      )
_____ )
      )
ANGLIN CONSULTING GROUP, INC. )
      )
Plaintiff )
      )
v. )    **Adv. Proc. No. 25-10032**
      )
GOVCON FUND, LP, *et al.*, )
      )
Defendants )

## MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT

Anglin Consulting Group, debtor-in-possession in the above-captioned case (the "**Debtor**" or "**ACG**"), hereby files this motion (the "**Motion**") for entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving a settlement agreement between the Debtor, Yashieka Anglin ("**Ms. Anglin**"), and GovCon Fund, LP and GovCon Fund II, LP (the "**Funds**"). In support thereof, the Debtor states as follows:

### Jurisdiction

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. The relief sought in this Motion is based upon Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

Justin Fasano (Fed Bar No. MD21201)
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 207770
(301) 441-2420
jfasano@mhlawyers.com
*Counsel for Anglin Consulting Group, Inc.*

**Parties**

3. ACG is the Debtor in this bankruptcy proceeding, having filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Columbia on August 11, 2025. ACG is also the Plaintiff in this adversary proceeding.

4. Ms. Anglin is the President and sole shareholder of the Debtor.

5. The Funds are private equity funds that make loans available, including in connection with the purchase of government contracting entities. The Funds are each Defendants in this adversary proceeding.

6. Erin-Michael Gill ("**Mr. Gill**") and Meghan O'Brien ("**Ms. O'Brien**") are officers and employees of a merger and acquisition advisory firm named Genaesis. Mr. Gill and Ms. O'Brien are also each Defendants in this adversary proceeding, but are not parties to the settlement agreement.

**Background**

7. ACG, in 2023, received $14,500,000 in loans from the Funds in connection with its acquisition of majority of the equity interest ("**units**") of a government contracting company, Blackfish Federal, LLC ("**Blackfish**"). The Funds secured confessed judgment promissory notes from ACG, 19.5 non-voting common units in ACG, a guaranty agreement with confession of judgment provisions from each of Ms. Anglin and Blackfish, and pledge agreements from ACG whereby it pledged all of its 74.5 voting common units in Blackfish to the Funds as security and collateral for the loans.

8. After ACG defaulted on the loans, the Funds confessed judgment against ACG in Fairfax County Circuit Court (the "**State Court**") on April 21, 2025 in case numbers CL 2025-05788 and CL 2025-05791. On the same date, the Funds also confessed judgment against Ms.

Anglin and Blackfish in the State Court in case numbers CL 2025-05790 and CL 2025-05792. Pursuant to the confessed judgments, GovCon Fund II obtained judgments in the amount of $5,407,123 against ACG, Ms. Anglin, and Blackfish; and GovCon Fund II obtained judgments in the amount of $10,273,534 against ACG, Ms. Anglin, and Blackfish.

9. On August 8, 2025, the State Court in case nos. CL 2025-05788 and CL 2025-05791 entered a temporary restraining order (the "**State Court TRO**") transferring on an interim basis ACG's 74.5 units to the Funds.

10. After ACG filed bankruptcy on August 11, 2025, it removed Fairfax County Circuit Court case nos. CL 2025-5788 and CL 2025-5791 to the United States Bankruptcy Court for the Eastern District of Virginia (the "**Removed Cases**"); and on or about September 9, 2025, the Removed Cases were transferred to this Court and opened as Adversary Case Numbers 25-10039 and 25-10040, respectively.

11. On August 18, 2025, ACG filed its Complaint to Avoid Transfers, for Preliminary and Permanent Injunction, and for Declaratory Relief (the "**Adversary Proceeding**"), wherein ACG sought, among other relief, to (a) avoid the State Court TRO and (b) deem certain agreements between ACG and the Funds void ab initio.

12. On or about September 15, 2025, this Court denied ACG's request for a preliminary and permanent injunction in the Adversary Proceeding, and extended the State Court TRO in favor of the Funds until October 20, 2025.

13. On September 29, 2025, the Funds filed an Answer and Counterclaim in the Adversary Proceeding, seeking, among other relief, a judgment in the Funds' favor granting a permanent injunction regarding the Funds' ownership of the Blackfish units formerly owned by

ACG. A preliminary and permanent injunction hearing is currently scheduled for November 19, 2025.

14. On October 10, 2025, this Court further extended the State Court TRO through and until November 21, 2025 while the parties pursued a judicial mediation with the Honorable Kevin R. Huennekens. This mediation was conducted on October 30-31, 2025, and successfully resulted in a settlement in the form of a detailed Settlement Term Sheet which is attached to this Motion at Exhibit A.

15. On October 31, 2025, Mr. Gill and Ms. O'Brien filed a Motion to Dismiss them from the Adversary Proceeding, which will be mooted if this Court approves the settlement.

**Relief Requested**

16. After good faith negotiations that were significantly assisted by Judge Huennekens at mediation, ACG, Ms. Anglin, and the Funds have reached an agreement that resolves the State Court TRO, the Adversary Proceeding, the Removed Cases, and provides a framework for the Debtor's chapter 11 plan. Therefore, by this Motion, the Debtor seeks entry of an order pursuant to Bankruptcy Rule 9019 approving the settlement, and because the settlement resolves numerous issues that are currently being litigated on an accelerated time frame, the Debtor is also requesting by separate motion, for this settlement to be heard on an expedited basis. Certain terms of the settlement are outlined immediately below, but the full agreement is set forth in the Term Sheet, and to the extent there is any inconsistency with the settlement summary and the Term Sheet, the Term Sheet will govern.

17. Summary of the Settlement:

(a) Blackfish. The Blackfish units acquired by ACG in 2023 and transferred to the Funds via the State Court TRO will be deemed permanently transferred to the Funds.

(b)     <u>Liquidating Trust</u>. A liquidating trust will be created under the Debtor's plan, a liquidating trustee will be selected by ACG and the Funds, and the Debtor will assign claims it may have against third parties to the trust (excluding claims against the Funds and related parties, Ms. Anglin, and any ACG affiliate). The trustee will seek to engage a law firm to pursue the third party claims, and may engage counsel on a contingency fee basis. In addition, the liquidating trust will indemnify the Funds for any losses and expenses in connection with claims or investigations relating to ACG's acquisition of Blackfish.

(c)     <u>Bankruptcy Plan</u>. ACG will continue to operate outside of the trust and may seek to reorganize its business under a chapter 11 plan. The Funds will vote in favor of a plan by the Debtor that establishes the liquidating trust, and that is consistent with this settlement.

(d)     <u>Watercraft Contract</u>. The watercraft inspection contract with the Department of the Army, which had been a Blackfish contract prior to the bankruptcy case but was awarded to ACG effective September 30, 2025, will be subcontracted by ACG to Blackfish. On November 10, 2025, ACG will subcontract 3 of the 9 employees working on the contract to Blackfish; and on October 1, 2026, ACG will (i) subcontract an additional 5 of the employees to a participating 8a entity of Blackfish's choosing that can lawfully perform the contract, (ii) subcontract the remaining ACG employee to Blackfish, and (iii) take all other steps necessary to novate or assign the contract to Blackfish's 8a designee.

(e)     <u>NARA Contract</u>. ACG and Ms. Anglin have agreed that they will not accept, compete, or assist another entity they directly or indirectly control with competing for work that is encompassed by Blackfish's contract with the National Archives and Records Administration, at any time prior to December 31, 2040.

(f)     <u>Releases</u>. The parties have exchanged mutual releases, except for the Funds' deficiency claims against ACG which will be determined; and upon approval of the settlement, the Debtor will dismiss the Adversary Proceeding against all the defendants with prejudice.

(g)     <u>Retainer</u>. McNamee Hosea currently holds approximately $47,000 in retainer that was received from Amtis, Inc., a Blackfish subsidiary. The Liquidating Trust will be funded by $10,000 from the retainer, and the Funds have agreed not to contest McNamee Hosea receiving the balance of the retainer to pay court approved fees and expenses for its representation of the Debtor.

(h)     SBA Approval. The parties will take commercially reasonable and good faith steps to obtain the SBA's approval of the terms of the settlement, and the agreement will be binding on the parties to the settlement if the SBA through counsel endorses the settlement approval order as either "seen and agreed" or "seen and not objected to".

## Basis for Relief

18.     The Debtor seeks the approval of this settlement pursuant to Bankruptcy Rule 9019, which states in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

19.     Compromises are tools for expediting the administration of the case and reducing administrative costs and, as such, are favored in bankruptcy. *See Official Comm. of Unsecured Creditors v. White* Plains *Joint Venture (In re Bond)*, No. 93-1410, 1994 U.S. App. LEXIS 1282, at \*9–\*14 (4th Cir. Jan. 26, 1994) ("To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." (internal quotation marks omitted)); *see also United States ex rel. Rahman v. Oncology Assoc., P.C., et al.,* 269 B.R. 139, 149 (D. Md. 2001) ("Settlements are to be encouraged, and it should not be the intention of a court to discourage settlements.").

20.     As a matter of policy, Bankruptcy Rule 9019(a) grants courts broad authority to consider and approve compromises and settlements involving the trustee and the bankruptcy estate. *See, e.g.*, Protective *Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) ("[I]n administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims to which there are substantial and reasonable doubts"). Rule 9019(a) commits the approval or

rejection of a settlement to the sound discretion of the bankruptcy court. *In re Michael*, 183 B.R. 230, 232 (Bankr. D. Mont. 1995).

21. In *TMT Trailer*, the Supreme Court pronounced the "fair and equitable" test as the standard for approval of a compromise and settlement. 390 U.S. at 424. In applying the "fair and equitable" test, courts look at various factors and determine whether the compromise is in the best interest of the estate and whether it is fair and equitable. These factors include: (a) the probability of success in litigation, (b) the potential difficulties if any in collection, (c) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it, and (d) the paramount interests of the creditors. *In re Frye*, 216 B.R. 166, 174 (Bankr. E.D.Va. 1977); *see In re Austin*, 186 B.R. 397, 400 (Bankr. E.D.Va. 1995).

22. Here, the Debtor respectfully submits that the settlement is fair, equitable and properly reflects the appropriate legal outcome. As an initial matter, the settlement is the product of good faith, arm's length negotiations between the Debtor, Ms. Anglin, and the Funds, with the extremely valuable assistance of Judge Huennekens as the Judicial Mediator. Moreover, the settlement provides benefits to the bankruptcy estate and satisfies the standards for approval of a compromise.

23. The first factor, probability of success in litigation, always entails some risk. Here, from the Debtor's perspective, the risk is particularly acute, because the Funds have already obtained a TRO with the State Court, and the TRO has been extended by this Court after a contested hearing. At the same contested hearing, the Court denied the Debtor's request for an injunction in this Adversary Proceeding. If the settlement is not approved, there is a significant risk that a permanent injunction would be entered in favor of the Funds at the hearing scheduled on November 19, without the benefits of the Setttlement Term Sheet which include the support

for a chapter 11 reorganization, as opposed to a full liquidation in chapter 11 or conversion to chapter 7. As such, this factor weighs heavily in favor of approval of the settlement.

24. The second factor, difficulty in collection, does not apply because the Debtor is not pursuing a damage claim against the Funds.

25. The third factor, the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it, clearly weighs in favor of settlement. ACG and Ms. Anglin have been litigating with the Funds for several months, both pre-petition and post-petition, and the legal expense has been substantial. The issues that have been, and would continue to be litigated, are complex and involve motions practice, briefing, and multiple contested hearings. With respect to the Adversary Proceeding and the Debtor's avoidance claims and public policy claims against the Funds, discovery has not even commenced, which would be an additional burden, expense, and delay, all working against the Debtor's present topmost objective which is to reorganize its business and exit bankruptcy.

26. The final factor, the paramount interests of the creditors, also favors approval of the settlement. The Funds are, by far, the largest creditors in this case. Moreover, all creditors will be the beneficiaries in the liquidating trust that is being formed as part of the chapter 11 plan, and the Debtor has agreed to assign its claims against third parties to the trust. The proposed settlement will therefore provide a benefit to the creditors under a plan, with a fiduciary charged to pursue causes of action without the expenses of a chapter 7 trustee, and will avoid the large administrative expense of this litigation.

27. For the aforementioned reasons, the Debtor submits that the Settlement Term Sheet is in the best interest of the bankruptcy estate and its creditors, and should be approved.

WHEREFORE, the Debtor requests entry of an order approving the Settlement Term Sheet attached hereto as Exhibit A, and granting such other and further relief as may be just and proper.

Dated: November 4, 2025

Respectfully submitted,

/s/ Justin P. Fasano
Justin Fasano (Fed Bar No. MD21201)
McNamee Hosea, P.A.
6404 Ivy Lane, Suite 820
Greenbelt, MD 207770
(301) 441-2420
jfasano@mhlawyers.com
*Counsel for Anglin Consulting Group, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this November 4, 2025, a true and correct copy of the foregoing was served by CM/ECF to all parties receiving notice thereby.

**/s/ Justin P. Fasano**
Justin P. Fasano

23914832.1 050763.00001